```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
JANET MATOS,                                                :
                                                            :    **MEMORANDUM DECISION**
                              Plaintiff,                    :    **AND ORDER**
                                                            :
              - against -                                   :    18-cv-4701 (BMC)
                                                            :
COMMISSIONER OF SOCIAL SECURITY,                            :
                                                            :
                              Defendant.                    :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not disabled as defined in the Social Security Act and its regulations for the purpose of receiving disability insurance benefits and Supplemental Security Income. The ALJ found that plaintiff has severe impairments of bipolar disorder, migraines, PTSD, and carpal tunnel syndrome. Notwithstanding those impairments, the ALJ found that plaintiff can perform medium work with certain physical limitations that are not material in this review proceeding, but also with limitations to accommodate her mental impairments. These consist of restricting her to only routine physical tasks and simple decisions, occasional contact with co-workers and the public, and occasional changes in the workplace setting.

## I.

Plaintiff's primary challenge is to the ALJ's determination to afford "no weight" to the opinion of plaintiff's treating physician, Dr. Diya Banerjee, a psychiatrist at the Bellevue Mental

Health Clinic.  The record contains a "To whom it may concern" letter from Dr. Banerjee, dated March 14, 2018 (quite late in the process, since plaintiff has an alleged onset date of November 25, 2013), that was sent to plaintiff's attorney.  This letter recites that plaintiff "has been in my care since July, 2017, and has consistently attended weekly appointments."  It also states that plaintiff "was transferred to my care in July 2017 . . . ."  However, there are no treatment notes in the record signed by or even mentioning Dr. Banerjee.

The record shows that prior to her treatment by Dr. Banerjee, a number of other Bellevue psychiatrists or psychiatric residents treated plaintiff beginning in September 2013.  Her mental health treatment can be broken into three periods.  First, beginning in September 2013, she was seen by Dr. Markos Emmanuel until December of 2014 and then by Dr. J. David Stiffler in January 2015.  Second, it appears she received no psychiatric treatment from January 2015 until May 2017.  Third, from May 2017 through June 2017, she was seen by Dr. Mary Kelleher, a psychiatrist, and Dr. Alexandra Junewicz, a psychiatric resident (or, at least, Dr. Kelleher approved Dr. Junewicz's notes), and then transitioned to Dr. Banerjee in July 2017.

Nevertheless, plaintiff has largely rested her case on Dr. Banerjee because Dr. Banerjee is the only one of these Bellevue psychiatrists who submitted medical opinions as to the severity of her impairments (which may make sense since she was the current and most recent treater).  In addition to the "To Whom" letter, Dr. Banerjee completed two medical source questionnaires.  It is not clear why there are two forms.  Dr. Banerjee signed one of the questionnaires on September 20, 2017 but the other is undated.  It seems a fair inference that Dr. Banerjee signed the undated form sometime prior to the September 20 form because the undated form recites that Dr. Banerjee had been treating plaintiff weekly for one month, while the September 20 form recites that she had been treating plaintiff weekly for three months.

There are some interesting differences between the two completed questionnaires – in some ways, the later, September 20 questionnaire shows a less severe impairment than the earlier, undated form – but in other ways, the reverse is true.  In any event, I think the Commissioner would have to concede that under either questionnaire, and certainly the September 20 version, acceptance of Dr. Banerjee's conclusions would all but require a finding of disability.  Her clinical findings consisted of "persistent depressive symptoms, impairment in sleep, panic attacks, flashback, heightened arousal, avoidance of cues."  She found plaintiff "unable to meet competitive standards" for thirteen work-related criteria, and "seriously limited" in three other criteria.  Dr. Banerjee also found that plaintiff had "marked" limitations in ADLs; social functioning; maintaining concentration, persistence, and pace; and that she had at least three episodes of decompensation in the prior twelve months lasting more than two weeks, for which Dr. Banerjee listed specific dates (October 2016; January 2017; and May 2017).  Finally, Dr. Banerjee opined that plaintiff's impairments would cause her to miss more than four days of work per month.

With this kind of very limiting opinion from plaintiff's most recent treating psychiatrist, we need to look at why the ALJ gave it no weight.  The ALJ offered two reasons: (1) "treatment notes contain mental status examinations that are within normal limits"; and (2) "claimant performs many activities of daily living including traveling to Puerto Rico, walking 4 miles for exercise, cooking and doing laundry."

The ALJ did not cite to any particular treatment note as to the "normal limits" finding, and only referred to a couple of treatment notes elsewhere in her decision.  First, in finding that plaintiff did not have a Listed impairment, the ALJ stated that "[r]ecords from Dr. Banerjee, a treating physician, indicate normal thought process."  The ALJ cited to Dr. Banerjee's undated

3

medical source questionnaire, but there is nothing in there about "normal thought process," to say the least – indeed, almost every answer Dr. Banerjee gave contradicts a finding of normal thought processes.

More fundamentally, when the ALJ said that she was relying on "records" from Dr. Banerjee, there were, as noted above, no such records other than the medical source statements and the "To Whom" letter. I do not see how the ALJ could find an inconsistency between Dr. Banerjee's opinions and her treatment notes when there were no notes of Dr. Banerjee's treatment.

The ALJ was most likely referring to the collective treatment notes from other Bellevue psychiatrists to which Dr. Banerjee presumably had access. Is there an inconsistency between those treatment notes and the severely restricted questionnaire answers that Dr. Banerjee completed?

There is very little in the treatment notes that speaks to Dr. Banerjee's expressed opinions, and most of what there is contradicts them. Work or work-related activities appear never to have been mentioned by either therapist or patient except the historical note that she used to work as a dental hygienist. The treatment notes, to the extent they are evaluative, seem to spend a somewhat disproportionate amount of time discussing whether plaintiff is suicidal or homicidal (she was not, but that is a mere threshold to asking the question of whether she is disabled). She has problems with sleeping, but sometimes she does better (insomnia seems a relevant factor in assessing RFC). Other than that, the notes are very general and repetitive. One learns that plaintiff is being treated for "insomnia, anxiety, panic attacks, and low mood", but one must hunt, mostly in vain, for any specifics as to severity that might bear on RFC.

The panic attacks, however, are usefully described in the treatment notes. As of May 24, 2017, Dr. Kelleher described them as follows:

> Janet has also struggled with anxiety and panic attacks. Her anxiety tends to be ruminative in nature, often focused on "to-do" lists or recent psychosocial stressors. She has had panic attacks, with symptoms of hyperventilation, shortness of breath, palpitations, and sobbing with feelings of lightheadedness and dizziness – *however, her panic attacks have recently been well-controlled, and she has not had one in nearly 6 months (last in winter 2016)*.

(Emphasis added). The timing of these panic attacks as reported contradicts Dr. Banerjee's questionnaire answers – Dr. Banerjee noted panic attacks in October, 2016, January, 2017, and May, 2017.

In addition, the treatment notes describe plaintiff's insomnia and anxiety as "accompanied by low mood, which [plaintiff] has described as *mild and melancholic in nature*." (Emphasis added). Plaintiff also told her therapist that "nightmares are not a major problem for her." As of June 14, 2017, her therapist concluded that plaintiff had considerably improved during therapy:

> Regarding her symptoms, she reported sustained improvement in her anxiety, low mood, and sleep problems. No recent overt panic attacks (symptoms have included hyperventilation, shortness of breath, palpitations, and sobbing with feelings of lightheadedness and dizziness), nightmares, SI/HI, substance use, other psychiatric symptoms, or recent physical symptoms were elicited. She continues to take her medications with good effect and no side effects.

In response to these rather positive progress notes, plaintiff cites to others that suggest her impairment, pulling out references to "depressed mood, a constricted affect, a dysphoric appearance, and fair insight and judgment"; or a "down and anxious mood." But the accusation of "cherry-picking" that plaintiffs' lawyers often direct at ALJ opinions is a two-way street, and here, for the reasons set forth below, I think it is plaintiff's counsel who is picking the cherries.

5

First, the notes cited by plaintiff were years earlier – 2014 to 2015 – than the more recent evaluations by Drs. Kelleher and Junewicz in late 2016 and through the summer of 2017. These earlier notes were by Drs. Emmanouel and Stiffler, who were treating plaintiff as part of the substance abuse program at Bellevue. The record is crystal clear that plaintiff successfully completed that program and that her alcoholism has been in full remission for years. This is consistently noted in the 2016-2017 treatment notes by Drs. Kelleher and Junewicz. Although plaintiff is correct that like most psychiatric patients, she has had her ups and downs, the unmistakable trend of her treatment is towards dramatic improvement, not only with regard to her substance problem, but her overall mental health. I am not going to set forth *verbatim* all the statements in the 2014-2015 records, but my view is that in terms of severity, the positive references outweigh the negative "mood" references cited by plaintiff, and thus give no support to Dr. Banerjee's severe opinions.

Second, even viewing the "mood" notations in the 2014-2015 treatment notes in isolation, they say little or nothing about plaintiff's RFC. It is undisputed that plaintiff had a psychiatric condition, else she wouldn't have been in therapy, but there is nothing in the 2014-2015 even hinting at the level of severity suggested by Dr. Banerjee's medical source statements.

If I have any disagreement with the ALJ's decision in this regard, it is one of language. It may have been too strong to give "no weight" to Dr. Banerjee's statements, because in fact the mentally-oriented work restrictions that the ALJ imposed as part of her findings, like routine and simple tasks (obviously to avoid a stressful environment) are compelled by Dr. Banerjee's opinion. Similarly, the ALJ's finding that the Bellevue treatment notes show that plaintiff's condition "was within normal range" is at best ambiguous; after all, what is "normal range"? But if these are errors, they are harmless. Dr. Banerjee's view that plaintiff is essentially non-

functional with regard to any workplace related activity has no support in the treatment notes, and the ALJ was therefore justified in giving her opinions little, if any, weight.

Although plaintiff was represented before the ALJ and is represented here by highly experienced counsel, there was no argument made in either the administrative or this judicial proceeding that the ALJ failed to develop the record because of the absence of any treatment notes from Dr. Banerjee. I inquired of the parties as to the significance, if any, of the absence of treatment notes for this 2-3 month period and, not surprisingly, plaintiff's counsel then contended that it is highly significant and the case should be remanded to obtain such records, while the Commissioner contended that in light of the entire record, and the fact that plaintiff was represented at the administrative hearing level by counsel, remand is unnecessary.

I reject plaintiff's belated argument, made only at the invitation of the Court, that the record is inadequate. First, as the Commissioner points out, we are talking about at most three months of records out of a five year alleged period of disability. Second, considering the trend of the progress notes, it would take a dramatic reversal of progress over a very short time for those notes to support Dr. Banerjee's opinions. Third, as the Commissioner also points out, the ALJ was justified in relying on plaintiff's attorney to complete the record, as the record is very comprehensive in all respects except for notes from Dr. Banerjee. Since plaintiff's counsel went to the trouble of obtaining more than one questionnaire from Dr. Banerjee and obtained other records from a number of sources, I have to at least allow the possibility that counsel elected not to submit such any notes from Dr. Banerjee, if there were any, because they would not have supported Dr. Banerjee's opinions.

Finally, I note that the Bellevue treatment notes that were before the ALJ were not the only evidence contradicting Dr. Banerjee's opinions. The consulting opinion squarely supports the ALJ's conclusion.

I therefore hold that the ALJ did not commit reversible error in giving Dr. Banerjee's opinions no weight, as there is substantial medical evidence to support her conclusion as to plaintiff's RFC, and Dr. Banerjee's opinions are nowhere supported in the record.

## II.

The only other point in error that plaintiff raises is that the ALJ did not properly evaluate her testimony and her description of her symptoms. Plaintiff attempts to come within those cases holding that merely stating that a claimant is "not entirely credible" is insufficient to meet the demands of SSR 16-3p which, to summarize, requires a comparison of plaintiff's testimony with the medical record to determine if her report of symptoms is consistent.

The question is fairly close. The ALJ could certainly have been more specific about plaintiff's testimony. On balance, however, this is not a case where the ALJ rested baldly on a finding of "not entirely credible." Rather, she compared the testimony to the evidence and found the testimony wanting. The ALJ's decision contains several references to her testimony – both the parts that she credited and the parts she didn't. For example, the ALJ found that "in understanding, remembering, or applying information, the claimant has a mild limitation. The undersigned observed that during the hearing, claimant was able to provide information about her past work including duties, timeframes and titles." Similarly, the ALJ found:

> In interacting with others, the claimant has a moderate limitation. Claimant testified to self-isolation. The record also indicates that she complained to her therapist about panic attacks and anxiety, but with no safety concerns. However, records also show that she socializes with friends and has traveled to Puerto Rico.

8

> She is also married and records fail to show any marital discord due to psychological symptoms.

(Citation omitted). The ALJ further observed that "contrary to claimant's testimony at the hearing, claimant stated during the consultative exam, that she performs many activities of daily living including personal care, cooking, cleaning and shopping."

The essence of plaintiff's complaint is that the ALJ should have done more to draw an express linkage between the medical evidence on which she relied and her rejection of plaintiff's testimony. That clearly would have been a stronger decision. Plaintiff has correctly observed that this Court and others have noted the vulnerability of an ALJ decision that relies solely on a finding that the plaintiff's testimony was "not entirely credible" or "not entirely consistent with the record" without saying why. See Castano v. Astrue, 650 F.Supp.2d 270, 279 (E.D.N.Y. 2009); see also Parker v. Astrue, 597 F.3d 920, 922-923 (7th Cir. 2010). Here, however, because the ALJ's RFC conclusion was solidly based on the medical record, a remand for further findings on credibility would not serve any purpose; the rejection of plaintiff's contrary testimony follows *ipso facto* from the ALJ's conclusions about the medical evidence. It is clear that the ALJ favored the medical records over plaintiff's testimony and a remand would in all likelihood result in the same conclusion. These cases take long enough to resolve without adding on additional hearings the outcome of which is virtually pre-ordained.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is denied, the Commissioner's cross-motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment, dismissing the complaint.

**SO ORDERED.**

                                                                          U.S.D.J.

Dated: Brooklyn, New York
        September 9, 2019